**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LISBAN RODRIGUEZ HERRERA,** | : | |
| **Petitioner,** | : | **CIVIL ACTION NO. 3:26-2966** |
| **v.** | : | **(JUDGE MANNION)** |
| **CRAIG LOWE, *et al.*,** | : | |
| **Respondents.** | : | |

FILED
SCRANTON
NOV 25 2026
PER ______
DEPUTY CLERK

## MEMORANDUM

Pending before the Court is petitioner Lisban Rodriguez Herrera's ("Rodriguez") renewed *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Rodriguez's petition will be **GRANTED.**

### I. BACKGROUND

Rodriguez is a citizen of Cuba. (Doc. 6-2 at 2). Rodriguez entered the United States on February 17, 2022, by crossing the United States-Mexico international border near San Luis, Arizona. *Id.* He was encountered by Border Patrol agents, taken into custody, and paroled into the United States. *Id.*

On August 21, 2023, Rodriguez was arrested by the Houston Police Department and charged with driving while intoxicated, to which he pleaded guilty. *Id.* at 3. On November 1, 2025, Rodriguez was arrested and charged

with driving under the influence. *Id.* On February 17, 2026, Rodriguez pleaded guilty and was sentenced to five days to six months of incarceration. (Doc. 6-7, ¶7).

On March 4, 2026, Rodriguez was taken into custody by Immigration and Customs Enforcement ("ICE") officials. *Id.*, ¶8. He was charged as an alien present in the United States without admission or parole and not in possession of proper documentation, in violation of §§212(a)(6)(A)(i) and (a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Doc. 6-3).

On March 31, 2026, Rodriguez was ordered removed to Cuba. (Doc. 6-4). That same day, ICE notified Rodriguez that it intended to remove him to Mexico, as a third-party country of removal. (Doc. 6-7, ¶11). The period for Rodriguez to file an appeal from his removal order lapsed on April 30, 2026—he did not file such an appeal, rendering the order final. (Doc. 6-4 at 4); *see also* EIOR Automated Case Information, A-Number: 220-726-399, Nationality: Cuba (last accessed on Nov. 17, 2026).

On July 2, 2026, Rodriguez filed his first petition for a writ of habeas corpus. (No. 3:26-CV-1836, Doc. 1). On August 7, 2026, a 90-day post-order custody review ("POCR") was completed. (Doc. 6-7, ¶15). It was determined that Rodriguez would remain in custody because he did not have strong community ties, demonstrating that he was a flight risk, and his DUI

convictions evidence that he was a threat to public safety. *Id.*, ¶17. On August 28, 2026, this Court denied the petition without prejudice, stating:

> Rodriguez . . . has neither been detained nor subject to a final order of removal for more than six months. Rodriguez has not presented any evidence necessary to overcome the presumption that detention for less than six months following a final order of removal is reasonable. If it later turns out that Rodriguez's detention does, in fact, become unreasonably prolonged, he may file subsequent habeas petitions.

(No. 3:26-CV-1836; Docs. 9 at 7, 10). On September 23, 2026, Rodriguez was served with a notice of panel interview. (Doc. 6-7, ¶17). On September 24, 2026, IJ Leila Mullican denied Rodriguez's bond because he is subject to a final order of removal. (Doc. 6-6 at 3). The period for Rodriguez to appeal from IJ Mullican's bond determination lapsed on October 26, 2026. *Id.*

On September 27, 2026, Rodriguez filed the instant, subsequent petition for a writ of habeas corpus. (Doc. 1). On October 9, 2026, Rodriguez claimed fear of removal to Mexico, and was referred to an asylum officer for a fear screening. (Doc. 6-7, ¶20). On October 15, 2026, the asylum officer completed the fear screening and found no credible fear. *Id.*, ¶21. Respondents filed a response to the instant petition on October 21, 2026, indicating that Rodriguez will be removed within the reasonably foreseeable future. (Doc. 6 at 1). However, the response largely ignores many of

Rodriguez's allegations, particularly regarding its purported failure to obtain travel documents, and identify a third country for removal. (Docs. 1, 6). On October 28, 2026, Rodriguez was referred to the Headquarters of the Refugee, Asylum, and International Operations Directorate ("HQ-RAIO") for third country removal. (Doc. 11-3, ¶4). However, it remains unclear as to whether a third country has been identified for Rodriguez's removal. (Doc. 11 at 2) ("ICE ERO continues to anticipate a significant likelihood of removal to a third country in the reasonably foreseeable future."). On November 13, 2026, Rodriguez filed a traverse. (Doc. 9).

Upon initial review, the Court was displeased with Respondents' failure to respond to some of Rodriguez's significant allegations, and otherwise apprise the Court of its efforts (or lack thereof) to effectuate Rodriguez's removal. Accordingly, the Court unfortunately had to delay the process of disposing of the instant petition, and order a supplemental response from Respondents. (Doc. 10). Respondents complied with the Court's request on November 24, 2026. (Doc. 11). This matter is now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus when a petitioner is "in custody under or by color of the

authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as Rodriguez's claim does not challenge the commencement of removal

proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g) divests the court of jurisdiction "only to [these] three discrete actions[.]").

Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not barred by §1252(b)(9) as Rodriguez does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process[.]").

Section 1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as Rodriguez does not challenge a discretionary detention choice. *See Patel v. O'Neil*, No. 3:25-CV-2185, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("[S]ection 1252(a)(2)(B)(ii) is inapposite because Respondents' 'statutory detention power is "not a matter

of discretion" to which §1252(a)(2)(B)(ii) applies[.]'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865, at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, No. 3:25-CV-2452, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, No. 2:25-CV-5555, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Rodriguez is detained under 8 U.S.C. §1231, which precludes immigration judges from holding a bond hearing. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (holding that the Government is not required to offer bond hearings after six months of detention to noncitizens held beyond the 90-day removal period set by §1231).

**c. Merits**

Rodriguez argues that his detention has become unlawfully prolonged and that he, therefore, should be released from custody. When an

immigration detainee has been given a final order of removal, his detention is governed by 8 U.S.C. §1231. Under the statute, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. §1231(a)(1)(A). This ninety day "removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B).

In *Zadvydas v. Davis*, the Supreme Court held that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. However, the Court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Id.* at 701. Accordingly, the Court reasoned that detention for up to 6 months following a final order of removal is "presumptively reasonable." *Id.*

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Further, "for detention to remain reasonable, as the period of prior postremoval grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Here, Rodriguez has been subject to a final order of removal since April 30, 2026. (Doc. 6-4 at 4); *see also* 8 U.S.C. §1231(a)(1)(B). On October 6, 2026, Rodriguez filed the instant petition, and as of the date of this memorandum, Rodriguez's detention has fallen outside the presumptively reasonable six-month period. *See Zadvydas*, 533 U.S. at 701. The question therefore becomes whether Rodriguez has sustained his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The Court finds that he has.

Rodriguez avers that because he has been denied removal to Cuba, that Respondents failed to secure his travel documents to effectuate his removal, and because he fears being removed to a third country; he has established that he is unlikely to be removed in the reasonably foreseeable future. (Doc. 1 at 24-25). Moreover, Rodriguez aptly notes—and Respondents essentially admit—that they have not even identified a third country to accept him in the first instance. *See* (Docs. 9 at 15, 11-3, ¶¶4-5); *see also* 11-3, ¶3 (noting that Rodriguez's continued detention was

recommended "*pending the third country acceptance and eventual removal.*").

Therefore, the burden shifts to Respondents to show that Rodriguez's removal is nonetheless likely in the reasonably foreseeable future. Courts within this district have found that the Government sufficiently rebutted a petitioner by showing that it had made efforts at completing the petitioner's removal, maintained contact with the relevant embassy, and requested updates on travel documents. *See e.g., Appiah v. Lowe*, No.3:25-CV-2222, 2025 WL 510974, at *4 (M.D.Pa. Feb. 14, 2025).

Curiously, Respondents largely ignored Rodriguez's claims in its initial response. (Doc. 6).[1] Even after being ordered to file a supplemental response, Respondents hardly provided a scintilla of evidence to support any tangible effort of ensuring that Rodriguez's removal will happen in the reasonably foreseeable future. (Doc. 11). Respondents merely filed a boilerplate affidavit from Deportation Officer Ezekiel Higgins stating that "there is a significant likelihood of removal in the reasonably foreseeable future." (Doc. 6-7, ¶23). They have also now filed a second affidavit from

---

[1] Unfortunately, it has become common for the Government to fail in meeting petitioners' due process allegations with the attention, detail, and explanation the Constitution and law require.

Deportation Officer Paul Weiss, which refers to the first affidavit, and only adds that over one month ago, Rodriguez's case was referred for third country removal. (Docs. 6-7, 11-3, ¶4).

While, since the last petition, an Asylum Officer determined that Rodriguez has no credible fear, (Docs. 6-7, ¶21; 11-2, ¶21), Respondents have not otherwise identified any tangible steps toward identifying a third country, much less obtaining travel documents, in order to effectuate Rodriguez's removal. *See Ebeid v. Warden of the Moshannon Valley Processing Ctr.,* No. 25-CV-411J, 2026 WL 292179, at *3 (W.D.Pa. Feb. 4, 2026) ("[T]here is no indication on the record that Petitioner has any ties to any third country, or that any third country otherwise has expressed a wil[ling]ness to accept him, or has begun preparing travel documents."); *see also Doe v. Oddo*, No. 3:25-CV-00353, 2026 WL 873011, at *3 (W.D.Pa. Mar. 30, 2026) ("The only evidence proffered by the Government is its unsuccessful efforts to locate a third country...[t]his evidence falls far short of rebutting [p]etitioner's showing.").

"A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Escalante v. Noem*, No. 25-CV-182, 2025 WL 2206113, at *4 (E.D.Tex. Aug. 2, 2025). For these reasons, the Court finds that the

Respondents' position lacks credence, and they have not maintained efforts to ensure that Rodriguez is deported in the reasonably foreseeable future; thus, the Court is compelled to accordingly grant the instant petition.

**d. Remedy**

As a remedy, Rodriguez seeks his immediate release from custody. (Doc. 8 at 3). The Supreme Court has instructed that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700. "In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.*

While the Court is concerned with Rodriguez's criminal record, it notes that the record is limited to two non-violent DUI-related offenses. Nonetheless, the Court is bound by the instructions set forth in *Zadvydas*. *Id.*; *see, e.g., Wazir v. Att'y Gen. U.S.*, 2026 WL 1122610, at *4 (M.D.Pa. Apr. 24, 2026) (ordering release for a petitioner with a criminal record of multiple sex offenses, and finding that, per *Zadvydas*'s framework, the petitioner "shall be subject to the terms of supervision in 8 U.S.C. §1231(a)(3) and attendant regulations.").Thus, the Court will order Respondents to

release Rodriguez from custody and subject him to the terms of supervision outlined in 8 U.S.C. §1231(a)(3).

## IV. CONCLUSION

The Court finds that Respondents have failed their responsibility of maintaining efforts to ensure that Rodriguez is deported in the reasonably foreseeable future. For the foregoing reasons, the petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED**. Respondents will be ordered to release Rodriguez from custody and subject him to the terms of supervision outlined in 8 U.S.C. §1231(a)(3). Respondents will also be required to submit an affidavit, pursuant to 28 U.S.C. §1746, confirming Rodriguez's release. An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 11/25/26
26-2966-01